In the Matter of RAC CORPORATION, Petitioner, *v.* NORMAN F. GALLMAN et al., Constituting the State Tax Commission, Respondents.

Third Department, May 4, 1972.

*Bleakley, Platt, Schmidt, Hart & Fritz* (*Thomas C. Platt, Frank A. Fritz, Craig D. Walley* and *George J. Marchese* of counsel), for petitioner.

*Louis J. Lefkowitz, Attorney-General* (*Ruth Kessler Toch* and *Vincent P. Molineaux* of counsel), for respondents.

KANE, J. This is a proceeding under article 78 of the CPLR (transferred to the Appellate Division of the Supreme Court in the Third Judicial Department by order of the Supreme Court at Special Term entered in Albany County) to review a determination of the State Tax Commission holding petitioner liable for sales taxes in the amount of $50,043.92 including interest.

Since incorporation in 1939 until 1964, Republic Aviation Corporation was engaged in the performance of prime contracts with various agencies of the United States Government. During World War II and for many years prior to 1965, Republic was a major producer of fighter and bomber aircraft. In 1964, after completion of production of the F-105 aircraft, the company had a net loss in excess of eight million dollars. Motivated by these financial reverses Republic negotiated a sale of substantially all of the company's assets, properties and rights, including the corporate name, pursuant to the terms and conditions of an agreement dated August 10, 1965 between Republic and two purchasers; Fairchild Hiller Corporation* and Farmingdale

---

*Under the purchase agreement Fairchild purchased substantially all of the operating assets, operating plant, equipment, name, business as a going concern, including accounts receivable, inventories, existing contracts, patents, copyrights and trade names, for a price in excess of 44 million, to be paid in Fairchild stock and cash. This sale was not a taxable event (Tax Law, § 1101. subd. [b], par. [4], subpar. [ii], cl. [A]).

Company, the latter being a joint venture formed in June, 1965 by owners of 7% of common stock of Republic. After consummation of the sale, Republic changed its name to RAC Corporation and adopted a plan of complete liquidation of the remaining assets of the company, comprising principally its cash, short term investments, and stock in a subsidiary.

Farmingdale purchased certain surplus property of Republic, both real and personal, for a price in excess of eight million dollars. Some of the alleged personalty consisted of exotic equipment used in aerospace research and development (including a plasma space chamber and a wind tunnel complex) valued at $2,142,271. This sale constitutes the subject matter of this controversy.

By notice dated January 9, 1967, a demand was made by respondent upon petitioner for additional sales tax and interest aggregating in the amount of $50,043.92, upon a determination that sales taxes should have been collected on the sale of equipment and fixtures to Farmingdale. Hearings were held incident to petitioner's request for a revision of this determination on November 17, 1967, February 16, 1968 and April 12, 1968.

On January 19, 1971 respondent issued a notice denying the application of petitioner, whereupon the latter paid the taxes, under protest, and within four months from the date of the determination commenced the within proceeding.

Section 1105 of the Tax Law imposes a sales tax on the " receipts from every retail sale of tangible personal property ". " Retail sale " is defined by section 1101 (subd. [b], par. [4], subpar. [i]) as a " sale of tangible personal property to any person for any purpose, other than (A) for resale as such ".

In the determination of respondent under review, the first of two issues was stated as " Whether a sale of property should be deemed a taxable sale at retail when the purchaser provides the vendor with a certificate other than the official ST-120 as prescribed by the Tax Commission ". Finding of fact No. 5 states that " The taxpayer did not receive from Farmingdale a valid resale certificate as prescribed in Section 1132 (c) of the Tax Law " and the determination concludes that " The sale to the Farmingdale Company was a taxable sale at retail ". Thus the respondent did not reach the question of whether or not the sale was exempt as a sale for resale, basing the determination upon noncompliance with form rather than the substance of the transaction.

Subdivision (c) of section 1132 at that time provided that " unless a vendor shall have taken from the purchaser a certifi-

cate, signed by the purchaser and bearing his name and address and the number of his registration certificate, to the effect that the property or service was purchased for resale * * * the sale shall be deemed a taxable sale at retail ": This provision created a presumption of taxability and placed the burden of proof on the vendor (cf. *Matter of American Cyanamid & Chem. Corp.* v. *Joseph*, 308 N. Y. 259). The vendor had to decide if the sale was taxable and, if it were, he had to collect the tax, but if alleged to be for resale, the vendor had to require a statement sufficient to comply with subdivision (c) of section 1132. The failure to do so would render the vendor personally liable for the tax (§ 1133, subd. [a]), having failed in his duty to collect sales taxes (Tax Law, § 1132, subd. [a]).

In the matter at hand, the petitioner did not receive an official resale certificate from Farmingdale but only a statement as follows: " The undersigned hereby certifies: That the tangible personal property described below which the undersigned shall purchase from you is intended to be held for investment until such time in the future as the market price thereof would make a sale advantageous."

Only in very clear-cut situations, however, should a vendor be held personally liable for a sales tax, especially where the nature of the sale would render it otherwise nontaxable. Further, this sales tax has been categorized as a special tax whose provisions, in circumstances such as these, must be strictly construed in favor of the taxpayer (*Bathrick Enterprises* v. *Murphy*, 27 A D 2d 215, affd. 23 N Y 2d 664; cf. *Matter of American Cyanamid & Chem. Corp.* v. *Joseph, supra*). Both the form and substance of the transaction should be considered. The certificate given to the petitioner, though inartfully expressed and clearly lacking compliance with subdivision (c) of section 1132, in its present form,* met the statutory requirements then imposed. All that was required was that the certificate contain a statement *to the effect* that the property was purchased for resale, and this the subject certificate does. The sale and use tax became effective August 1, 1965, the subject purchase agreement was executed on August 10 and the sale consummated on September 30 of the same year. Indeed, the failure to follow strict form could have been occasioned by the time elements. (The record does not support the claim of respondent that Farmingdale had a registration number.) The official form (ST-120) that respondent

---

* Chapter 473 of the Laws of 1969 inserted "in such form as the tax commission may prescribe", mandating use of a State form. At the time of this transaction, however, the form such certificate was to take was not prescribed.

contends petitioner should have received, but which the statute did not require, contained a statement that if no, or an improper, resale certificate was filed, then the burden of proving that the sale is not at retail is upon the vendor. Hence the failure to file the ST-120 did not result in automatic liability.

It is worthy of note that a subsequent amendment to subdivision (c) of section 1132 provides that where a resale certificate has been furnished to the vendor, the burden of proving non-taxability then falls " solely upon the customer " (L. 1967, ch. 320). This amendment did not change the law; it merely clarified its meaning. Taken in full context, it is obvious that the duty intended by the Legislature to be imposed upon a vendor was an obligation to collect the tax or obtain a resale certificate which to a reasonable man would indicate an intent to resell. The vendor is not required to police or investigate his customers (cf. *Matter of American Cyanamid & Chem. Corp.* v. *Joseph*, *supra*; 2 CCH New York State Tax Reporter, par. 60-299.30).

The record discloses that Farmingdale was formed as a joint venture in 1965 for the specific purpose of handling the purchase of surplus assets of Republic. This company engaged in no other business or manufacturing, nor did it ever use, for any purpose, any of the equipment purchased, other than one typewriter. Within less than two months after the sale, Farmingdale hired two Republic employees, one a method engineer whose function was to inventory and catalog the equipment to ready it for sale, and another engineer who was hired to sell the exotic equipment which Farmingdale had acquired from Republic. Within 14 months after the purchase, almost 90% of the taxed property was resold by Farmingdale. The statute does not designate a time during which the resale has to be made, and this is understandable, since it is usually the nature of the purchaser's business which reveals a purchaser's motive for buying. While the fact that Farmingdale resold almost 90% of ostensibly unmarketable goods within 14 months does not prove conclusively that it purchased for resale, it certainly circumscribes concisely its intention at the time of the original purchase. This leads to the conclusion that the property was purchased for resale in the marketing sense. The desire to obtain a favorable price as revealed in the certificate does not run counter to the general objective of those involved in the process of product distribution. It is also quite apparent that Republic, being no stranger to the principals of Farmingdale, knew fully the latter's objectives and intentions, a fact which may have induced lack of strict compliance. That same knowledge also provides a basis

for finding that in good faith Republic believed that the sale was not taxable.

The finding of the respondent that the sale to Farmingdale was a taxable event must be rejected as not being supported by substantial evidence and contrary to law. In view of this rejection, the secondary issue of realty versus personalty is rendered academic.

The determination should be annulled, with costs, and matter remitted for further proceedings not inconsistent herewith.

HERLIHY, P. J., GREENBLOTT, COOKE and SIMONS, JJ., concur.

Determination annulled, with costs, and matter remitted for further proceedings not inconsistent herewith.